UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RODOLFO TORRES | CIVIL ACTION |
| VERSUS | NO. 11-1413 |
| DANOS AND CUROLE MARINE<br>CONTRACTORS, LLC, ET AL | SECTION "N"  (2) |

**ORDER AND REASONS**

Before the Court is a Motion for Partial Summary Judgment (Rec. Doc. 80), filed by third-party plaintiff Triton Diving Services, L.L.C. ("Triton").  Premier Offshore, Inc. ("Premier") has filed an opposition memorandum (Rec. Doc. 93).   Triton has filed a reply memorandum (Rec. Doc. 118).

**I. BACKGROUND:**

This case arises from personal injuries sustained by plaintiff Rodolfo Torres on June 18, 2010, when he was struck by fire boom in connection with the *in situ* burning of spilled oil following the *Deepwater Horizon* blowout.  Plaintiff alleges that his injuries occurred while he was employed as a seaman by Danos and Curole Marine Contractors, L.L.C. ("D&C") and assigned to the *M/V Triton Patriot* (also known as the *M/V Sea Fox*), a vessel owned by Triton. Rec. Doc. 23.   Plaintiff alleges that a crane operated by an employee of Triton or D&C was lifting the boom from the vessel when it fell approximately 40 feet and struck the plaintiff.  Rec. Doc. 1.  After being sued, Triton filed a third-party demand against Premier alleging that Premier had chartered the *M/V Triton Patriot* pursuant to a Master Time Charter Agreement (the "MTC")

between Triton and Premier and that Premier had agreed to defend and indemnify Triton against claims by any employee of Premier's contractors or such contractors' contractors.  Rec. Doc. 6.  Triton also alleged that "[i]t was understood between Triton and Premier that Premier would require any of its subcontractors coming aboard the M/V TRITON PATRIOT to sign an agreement holding Triton harmless from any all injuries to the subcontractors' employees and that Premier's subcontractors would agree to defend and indemnify Triton from any and all claims brought by the subcontractors' employees against Triton." *Id.*

Triton now seeks summary judgment in its favor declaring that Premier breached an oral and/or email agreement between Premier and Triton in which Premier obligated itself to require third parties boarding the vessel to sign an agreement to hold harmless and indemnify Triton for personal injuries sustained by an employee of any such third party. Rec. Doc. 80.  Triton maintains:  (1) that Premier was contractually obligated (pursuant to an oral or email agreement) to ensure that D&C executed a hold harmless agreement in Triton's favor; (2) that Premier failed to do so; (3) that had it done so, D&C would have been required to indemnify and defend against plaintiff's claims against Triton; and (4) that Premier should therefore itself be required to defend and indemnify Triton.  Rec. Docs. 80, 118.

Premier argues that Triton's motion should be denied for several reasons:  (1) Triton's claim of an alleged side agreement is barred by the merger clause of the MTC, and Triton's evidence is barred by the parol evidence rule applicable to admiralty contracts; (2) Triton's claim is an impermissible attempt to amend the MTC, which contains detailed indemnity provisions and expressly states that it may not be amended except by a written agreement signed by both

parties; (3) even if the Court were to admit evidence of the alleged side agreement, Triton has failed to produce any proof that Premier consented to be bound by any such side agreement; and (4) even if the Court were to find that such a side agreement existed, Triton has failed at this juncture to establish what the terms of such an agreement might have been.

## II. LAW AND ANALYSIS:

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### A. The Merger Clause of the Master Time Charter Agreement:

Although the MTC contains detailed indemnity provisions, Triton does not seek to enforce these provisions. Instead, Triton argues that Premier breached a side agreement, allegedly formed during negotiation of the MTC, wherein Premier agreed to ensure that certain persons[1] executed hold harmless agreements in favor of Triton. The merger clause of the MTC protects against just such a claim. It provides:

> Integration. This Agreement supercedes all prior agreements between the parties with respect to its subject matter and constitutes (along with any written Short Form Time Charter(s)) a complete and exclusive statement of the terms of the agreement between the parties with respect to its subject matter. This Agreement may not be amended except by written agreement executed by authorized representatives of both parties.

---

[1] It is unclear precisely from whom Premier was to obtain such agreements. The third-party complaint alleges that Premier was to obtain such an agreement from "any of its subcontractors coming aboard the M/V TRITON PATRIOT." Rec. Doc. 6. The emails that Triton offers as proof of the side agreement suggest something quite different, namely that Triton wanted Premier to obtain a hold harmless agreement from any party *other than* a customer, contractor, or subcontractor of Premier. Rec. Doc. 80-3 at 6, 25, 29; *see* discussion *infra*. Now, in the instant motion, Triton seems to maintain that Premier was to obtain such agreements from all persons boarding the vessel. *See, e.g.*, Rec. Doc. 80 at 1.

3

Rec. Doc. 93-1 at 10.  Moreover, the evidence that Triton submits as proof of the alleged side agreement is barred by the parol evidence rule.  The Fifth Circuit has stated that in admiralty cases, the following parol evidence rule applies:

> When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing.

*Battery Steamship Corp. v. Refineria Panama, S.A.*, 513 F.2d 735, 738 (2d Cir.1975) (quoting 3 A. CORBIN, CONTRACTS § 573 (1960); *see Har-Win, Inc. v. Consolidated Grain & Barge Co.,* 794 F.2d 985, 987 (5th Cir. 1986) (quoting same); *cf. Petrobras America Inc. v. Union Oil Co. of California,* 177 Fed. Apex. 460, 461 (5th Cir. 2006) (applying parol evidence rule in OCSLA case).  Triton insists that its claim does not run afoul of the merger clause or the parol evidence rule because the agreement it seeks to prove is a separate agreement, not a modification of the MTC.[2]  Yet, the alleged agreement imposes obligations on Premier in connection with its charter of Triton's vessel.  Thus, it directly concerns the "subject matter" of the MTC and is therefore barred by the merger clause.

### B.     Failure of Proof as to Terms of the Alleged Side Agreement and Premier's Assent Thereto:

Even if Triton's claim were not barred by the merger clause, Triton has presented no evidence that Premier assented to the side agreement now urged by Triton.  Triton has presented evidence of email correspondence demonstrating that during negotiation of the MTC, Triton

---

[2] This argument appears to be contradicted by excerpts of deposition testimony submitted by Triton.  *See* Rec. Doc. 118-1 at 5 of 10.  Triton's representative testified:  "Q: The indemnity agreement and the time charter agreement themselves would be modified?  A: Yes.  Q: So that contractors like Danos & Curole that came on the SEA FOX would give Triton indemnity? ...Is that right?  A: Yes." *Id.*

4

expressed a desire to have certain third parties execute hold harmless agreements.[3]  However, it has presented no evidence that Premier obligated itself to ensure, guarantee, or otherwise be responsible for the execution of such agreements.

Finally, even if the Court were to assume (despite the lack of proof) that Premier ultimately assented to Triton's request that hold harmless agreements be executed and agreed to be responsible to Triton for the procurement of such agreements, Triton has nevertheless failed to establish that Premier's obligation to obtain hold harmless agreements would have extended to D&C and its employees.  The email correspondence submitted by Triton shows that Triton made the following request on May 22, 2010:  "Also attached is a mutual hold harmless agreement that we request executed by any third party *(a party not a member of the Charterer's Group as defined in the Master Time Charter)*."  Rec. Doc. 80-3 at 6 (emphasis added).   The following day, the same Triton employee sent an email to Premier attaching a revised draft of the MTC, explaining changes he had made to the indemnity provisions of the MTC, and stating:  "We should also put to bed the issue regarding boarding agreement (mutual hold harmless) *for parties not defined* under the indemnities."  Rec. Doc. 80-3 at 25 (emphasis added).   The term "Charterer Group" is defined in the indemnity section of the MTC to include:

> (I) Charterer, its parent, subsidiary and affiliated or related companies, (ii) its customer and their joint owners, partners, joint venturers, if any, and their respective parents, subsidiary and affiliated or related companies, (iii) its and their contractors and subcontractors of every tier, and (iv) the officers, directors, agents, consultants, insurers and employees of all the foregoing (the "Charterer Group")....

Rec. Doc. 93-1 at 7.   Triton has failed to demonstrate that D&C is not a member of the

---

[3] Rec. Doc. 80-3 at 6, 25, 29.

"Charterer Group" or otherwise "defined" in the indemnity provisions of the MTC such that it would have been encompassed within the alleged side agreement.   Consequently, even if Triton's claim were not barred by the merger clause, and even if Triton had established Premier's consent to the alleged side agreement, its motion would fail nevertheless because it has failed to demonstrate that Premier breached the alleged contract when it failed to obtain a hold harmless agreement from D&C.

## III.  CONCLUSION:

Accordingly, for all of the foregoing reasons;

**IT IS ORDERED** that the Motion for Partial Summary Judgment **(Rec. Doc. 80)**, filed by third-party plaintiff Triton Diving Services, L.L.C., is hereby **DENIED**.

New Orleans, Louisiana, this 12th day of June, 2013.

_____
**KURT D. ENGELHARDT
UNITED STATES DISTRICT JUDGE**